| AOC-105              Doc. Code: CI | | Case No. | |
| Rev. 1-07 | | Court | [7 Circuit  n  District |
| Page 1 of 1 | | | |
| Commonwealth of Kentucky | CIVIL SUMMONS | County | Fayette |
| Court of Justice www.courts.ky.gov | | | |
| CR 4.02; CR Official Form 1 | | | |

**PLAINTIFF**

Tracie Koontz

**VS.**

**DEFENDANT**

United Parcel Services

**Service of Process Agent for Defendant:**

CSC-Lawyers Incorporating Service Company

421 West Main Street

Frankfort, KY 40601

**THE COMMONWEALTH OF KENTUCKY**
**TO THE ABOVE-NAMED DEFENDANT(S):**

You are hereby notified a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons.  **Unless a written defense is made by you or** by **an attorney on your behalf** within **20 days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached Complaint.

The name(s) and address(es) of the party or partier the document delivered to you with this Summons.

Date: _____ JAN 1 5 2011 _____ , z

VINCENT RIGGS
' FAYETTE **CIRCUIT COURT**
FAYETTE COUNTY _____ Clerk
gy  120 N. LIMESTONE STREET C 103 _____ D C
LEXINGTON, **40507**

| **Proof of Service** |
| This Summons was served by delivering a true copy and the Complaint (or other initiating document) to: |
| this          day of                          , 2          . |
| Served by: |
| Title |

EXHIBIT A

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
DIVISION
CASE NO._____

TRACIE KOONTZ                                                    PLAINTIFF

VS.                              COMPLAINT

**UNITED PARCEL SERVICES**
**Serve: CSC-LAWYERS INCORPORATING SERVICE COMPANY**      **JAN 15 2013**
    421 WEST MAIN STREET
    FRANKFORT, KY 40601

**and**
**BRIAN SCHWEINEFUS**                                              **DEFENDANTS**
**Serve: Brian Schweinefus**
    Human Resources Manager
    United Parcel Services
    1702 Mercer Road
    Lexington, KY 40501

****************************************************************

Comes the Plaintiff, Tracie Koontz, "Koontz", by counsel, and for her Complaint against the Defendants, United Parcel Services, Lexington, Fayette County, Kentucky, and Brian Schweinefus, states as follows:

1. Koontz is an adult female and, at all times relevant for jurisdictional purposes, has been a resident and citizen of Harrison County, Kentucky.

2. Koontz is a female with a disability or a perceived disability and, as such, she is a qualified individual with a disability within the meaning of KRS 344.010, et seq.

1

3.  As referenced in this Complaint, the initials "UPS", refer to the Defendant, United Parcel Services, as a corporate entity, as well as to its successors, assigns, its managers, supervisors, employees, servants and agents.

4.  UPS is a foreign corporation, and at all times relevant has been engaged in providing logistical services to private individuals and businesses in the Commonwealth of Kentucky.

5.  Brian Schweinefus is the Human Resources Manager for UPS at its Lexington, Kentucky sorting terminal facility/sorting center, who at all times relevant herein, had supervisory authority over Koontz's job placement and employment relationship with UPS.

<u>JURISDICTION AND VENUE</u>

6.  This Court has jurisdiction over this matter pursuant to the provisions of KRS 342.197 (1) & (3) of the Kentucky Workers' Compensation Act, "the Comp Act"; under the provisions of KRS 344.010, et. al., the Kentucky Civil Rights Act, "the Rights Act", KRS 446.070, and such additional authority provided by the Constitution of the Commonwealth of Kentucky as may be required to bring one or more of the claims herein.

7.  KRS 342.197 (1) and (3) specifically provide that notwithstanding any other provisions of the Comp Act, when an employee alleges that she has been subjected to harassment, coercion, discharge, or has been "discriminated against in any manner whatsoever" for filing and pursuing a claim for workers' compensation benefits, the Comp Act no longer provides the exclusive remedy for the employee to seek redress of

2

the wrong and the wronged employee shall have a civil cause of action in the Circuit

Court where the complaining party alleged she sustained damages as the result of

said discriminatory behavior by the employer, its employees, supervisors and agents.

8.  Judicial decision has established that the terms "filing and pursuing" as set forth in

KRS 342. 197 (1) & (3) are to be read in the disjunctive rather than in the conjunctive.

9.  The Rights Act provides that it shall be unlawful for an employer, acting through its

employees and agents, to discriminate or retaliate against any other employee

because of that person's disability or perceived disability, as that term is defined by or

through the provisions of KRS 344.010, et seq., and that it is unlawful for an employer

to retaliate or discriminate against an employee seeking to enforce rights provided to

the complaining party by KRS 344.010 et seq.

10.  At all times relevant, the number of persons employed by UPS exceeded the

number of persons required to bring UPS under the provisions of both the Comp Act

and the Civil Rights Act.

11.  The Civil Rights Act provides that it shall be unlawful for an employer, acting

through its employees and agents, to discriminate or retaliate against any other

employee because of that person's gender and/or disability or perceived disability.

12.  It is unlawful under the provisions of KRS 344.280 for an individual to retaliate

against the complaining person by aiding, abetting and/or conspiring with another,

and/or coercing others to violate one or more of civil rights to which Koontz is entitled

by virtue of the provisions of KRS 344.010, et seq.

3

13.  The amount in controversy exceeds the minimal jurisdictional amount for this

Court.

14.  Venue is properly set in Fayette County, Kentucky, because that is the site of the

UPS business at which Koontz was employed and the place at which the causes of

action alleged herein occurred

STATEMENT OF FACTS

15.  Koontz began her employment with UPS on April 27, 1992 at West Carollton, Ohio

and thereafter she was transferred and reassigned to work in Fayette County,

Kentucky, on or about January 8, 2010, and her employment with UPS terminated on

or about May 25, 2012.

16.  At all times relevant, acting by and through its managers, supervisors and agents,

for whose actions UPS is responsible and liable, UPS has engaged in Fayette COunty,

Kentucky in the business of receiving, sorting and shipping parcels and freight to

private homes and businesses in Kentucky.

17.  At all times relevant, UPS was an employer as defined by KRS 342.615, and as

such, was responsible for securing its insurance coverage, maintaining and complying

with the Comp Act and the Administrative Regulations in 803 KAR 25:009, et seq.

18.  At no time during her employment with UPS in Kentucky, did Koontz ever reject

coverage of her employment by the Comp Act.

19.  At all times relevant during the period of Koontz employment by UPS in Kentucky,

UPS, its managers, supervisors, employees, and agents were required to comply with

4

the provisions of the Comp Act and the Rights Act in its/their employment relationship with Koontz.

20.  At all times relevant, during the period of her employment by UPS in Fayette County, Kentucky, Koontz was assigned by UPS to work in an area in which trucks were washed and in the same area there were many birds which nested and/or stayed there in very heavy concentration, making it altogether reasonable to believe that Koontz would be and, in fact, she was exposed to dust from bird "droppings" which are a recognized source of the organism or spores which cause human beings to contract and suffer from the pulmonary disease of histoplasmosis.

21.  On or about June 8, 2011, while assigned to work in close vicinity to the UPS truck wash area at its Fayette County facility, and while working in the course and scope of her employment with UPS in Fayette County, Kentucky in the said truck wash area as a requirement of her employment with UPS, Koontz was informed by a physician that she had contracted the pulmonary disease of histoplasmosis.

22.  The Comp Act provides at KRS 342. 316 that an employee may pursue a claim for workers' compensation disability benefits if, as the result of that employee's employment, she has sustained an injurious exposure to and contracted or otherwise sustained a disease which can and does cause the employee to require medical treatment and be entitled to disability income benefits as provided by the Comp Act.

23.  In accord with the provisions of the Comp Act, Koontz promptly gave notice to UPS management on June 24, 2011, that she had been diagnosed with the disease of

histoplasmosis and she had reason to believe the injurious exposure to the disease
had occurred in the course and scope of her employment in Fayette County by UPS.

24. As the result of her contraction of the disease of histoplasmosis, Koontz became
very ill, required extensive medical treatment and lost months of employment.

25. During the relevant period herein, and based upon information provided by
pulmonary and radiology physicians, Koontz employed an attorney who assisted her in
the pursuit of a claim for Kentucky Workers' Compensation benefits by filing an
Application for Resolution of an Occupational Disease Claim (DWC Form 102-OD)
with the Kentucky Department of Workers' Claims on July 29, 2011.

26. Koontz was successfully treated for the disease of histoplasmosis and she was
released to return to work by her physician on February 28, 2012.

27. Koontz's workers' compensation claim was ultimately dismissed on March 1, 2012,
on the grounds that the medical evidence did not limit the source of her exposure to
the biological cause of the histoplasmosis to the exposure in her work with UPS.

28. Defendant Brian Schweinefus advised Koontz and clearly caused her to
understand that if the physician released her to perform work involving lifting of up to
thirty (30) pounds, she would be returned to work with UPS.

29. On March 19, 2012, Koontz's treating physician released her to return to work to
regularly perform lifting of up to thirty (30) pounds.

30. Koontz remained on the UPS employee roster after her workers' compensation
claim was dismissed and she met all the conditions which she had been told by UPS
would be necessary for her to return to active employment.

31.  Under applicable law as contained in KRS 342.197 (1) & (3), the employee is

protected from discrimination from the moment she initiates the pursuit of a claim for

workers' compensation benefits, without regard to whether that pursuit is ultimately

successful.

32.  Koontz remained on the UPS employee roster but without pay while she was being

treated for the histoplasmosis.

33.  Subsequent to successful medical treatment for her contraction of the said disease

of histoplasmosis, Koontz's treating physician provided a medical release which was

specific that plaintiff, Koontz, could return to work for UPS with the only restriction

being that that she not be placed in a job in which there would be any known exposure

to bird droppings.

34.  After Koontz's workers' compensation claim was dismissed and she met all the

lifting requirements which she had been told by UPS would be necessary for her to

return to active employment, Koontz wrote a letter to UPS management requesting that

the accommodation she would require toreturn to work for UPS would be that she not

return to the location at the Lexington, Kentucky facility where she had been required

to work in the vicinity of large deposits of bird droppings because of the known

connection between bird droppings and the contraction of histoplasmosis.

35.  A decision of the Kentucky Court of Appeals has ruled that KRS 342.197 (1) & (3)

provides a cause of action for discrimination against an employee for pursuing a claim

for benefits under the Comp Act even if the claimant ultimately is unsuccessful in

recovering workers' compensation benefits.

36.  After Koontz was medically released to return to work for UPS, she advised UPS that she had received a release to return to work with the restriction that due to her susceptibility to histoplasmosis, she should not be placed in an area where she would be exposed to a known concentration of bird droppings.

37.  The Kentucky Department of Labor, Division of Kentucky Occupational Safety and Health had been alerted by Koontz in 2011 that a risk was posed to employees having to work without proper breathing protection in the truck washing area where there was a significant concentration and exposure to a known histoplasmosis contaminant.

38. The UPS facility in Lexington, Kentucky, where Koontz worked is a very large facility which employs hundreds of men and women, with much of the hourly paid and salaried work being performed in areas in which there would not be any possible injurious exposure to bird droppings or any other pulmonary contaminant.

39.  Koontz had much experience in performing supervisory work for UPS in different operational functions, most of which would not have posed any threat of an injurious exposure to any pulmonary contaminant.

40.  Koontz retained her status as a UPS employee during the period while she was off work but not being paid when being treated for and recovering from the disease of histoplasmosis.

41.  Koontz was still an employee of UPS when she was medically released to return to work by her treating physician with medically imposed restrictions.

8

42. After she was released to return to work by her treating physician, Koontz requested that UPS make a reasonable accommodation to return her to employment in a job that would not cause her to be exposed to bird droppings.

43. UPS refused to make any accommodation, reasonable or otherwise, for Koontz and told her that the only area to which she would be assigned on return to work would be at or near the same truck washing area where she would necessarily be exposed to a high concentration of dust and matter coming from the area where the bird droppings were concentrated.

44. Koontz had the skills and knowledge to be assigned to jobs at the said UPS sorting center in Lexington, Kentucky, where UPS has a large work force and a large supervisory force and could have reasonably accommodated Koontz by reassigning her to work in an area in which she would not have been exposed to any contaminants known to cause histoplasmosis and any other pulmonary disease.

45. On May 22, 2012, Koontz was told by Schweinefus acting in his capacity as a member of UPS management at the Lexington, Kentucky sorting facility that she would be reassigned to a dispatcher job, however, when she reported for the said dispatcher job, she was told that no such job was available for her.

46. Because UPS would not permit Koontz to return to its employment after she filed for and pursued a claim for workers' compensation benefits while continuing to promise her that she would be returned to work, its action constituted an involuntary termination of her employment or a constructive discharge of Koontz's employment.

47. UPS was substantially motivated in its decision to not permit Koontz to return to its employment by the fact that she had pursued a claim for workers' compensation benefits.

48. When it became evident that UPS would not permit Koontz to return to its employment, Koontz took the necessary action to mitigate her damages by seeking other employment.

49. On July 30, 2012, Koontz began employment with another employer at a significantly reduced wage rate from the wages which she had earned at UPS before she had filed her workers' compensation claim, and which she would have earned at UPS but for the actions of UPS, its managers and supervisors which/who refused to permit Koontz return to employment after she pursued her claim for workers' compensation benefits and after she requested a reasonable accommodation which would have enabled her to return to work without further exposure to a known source of the contaminant which carries the biological source of the permanent, non-transmittable pulmonary disease of histoplasmosis which she suffers.

50. UPS recognized and was informed that as the result of Koontz contraction of histoplasmosis, she had become a qualified disabled employee with a permanent medical condition requiring accommodation as defined by the Rights Act.

51. UPS knew or should have known that because of the type of medical condition Koontz sustained as the result of having a history of being diagnosed and treated for histoplasmosis, she would continue to be subject to recurrence of the disease in the

10

future if she were exposed to conditions known to create the environment for

contraction of the disease.

52.  UPS knew or should have known that Koontz was qualified both physically,

mentally and by prior training to perform the essential functions of numerous jobs

available at UPS with reasonable accommodation, and knew that she was willing to

accept such other jobs if offered by UPS.

53.  UPS stated in its employee handbook that it operates its Lexington sorting center

and terminal facility in full compliance with the provisions of the Rights Act by

accepting its responsibility to make reasonable accommodations so that work is

available for employees who are disabled or perceived to be disabled as those terms

are defined in the Rights Act.

54.  Koontz reasonably believed that after she became susceptible to further pulmonary

illness if she was exposed to areas in which there was a concentration of bird

droppings, that UPS would make reasonable accommodation by placing her in work

for which she was qualified in an area where she would not be subject to exposure to

the contaminants biological material in bird droppings known to cause histoplamosis.

55.  When Koontz reported to UPS management that she would require job

reassignment so as to avoid further exposure to a known source of histoplasmosis

contaminants, UPS management in the person of Human Resources Manager,

Schweinefus, acted unilaterally in denying her any reasonable accommodation

through relocation within the UPS Lexington, Kentucky sorting facility to a job

assignment other than that which she was performing when she became permanently

11

disabled for performing work in an area where there would be a known exposure to the biological matter known to cause a susceptible person to contract histoplasmosis.

56.  Koontz has a permanent disability or a perceived disability as that term is used in the Rights Act; however, as the result of the knowledge and job skills she had developed during her years of employment with UPS, she was "otherwise qualified" to perform requirements of jobs at the UPS Lexington facility, with or without reasonable accommodation.

57.  As the result of the decision of UPS to refuse to make reasonable accommodation to permit Koontz to return to active employment and its refusal to engage in a reasonable interactive process as required to enable Koontz to be placed in a job at the UPS Lexington sorting facility, Koontz has suffered an unlawful adverse employment action because of her disability or perceived disability.

58.  By acting unilaterally and without following the necessary protocol of the multi-step mandatory interactive accommodation process in good faith, Human Resources Manager Schweinefus intentionally interfered with and violated rights to which Koontz was entitled under the provisions of the Rights Act.

59.  UPS unlawfully discriminated against Koontz and violated rights to which Koontz was entitled under the provisions of KRS 342.197 (1) & (3) because it was substantially motivated in its refusal to permit Koontz to return to work after she had recovered from the histoplasmosis because she had pursued a workers' compensation claim for what she believed to be a work related occupational disease.

60. Schweinefus, acting individually and through the authority vested in him by UPS, unlawfully conspired and/or coerced and/or aided and abetted other UPS supervisory personnel to deny reasonable job accommodation rights to Koontz.

61. Schweinefus' aforesaid unlawful actions against Koontz were in violation of the provisions of KRS 342.280, and he, therefore, may be held individually liable to Koontz.

62. The refusal of UPS to provide reasonable accommodation to Koontz to protect her from further exposure to contaminates known to cause histoplasmosis, constituted an adverse employment action causing Koontz to suffer damages as set forth in KRS 342.197 (1) & (3) and KRS 344.010, et seq.

63.  At all times relevant, UPS, its managers, supervisors, and agents was/were acting for and on behalf of UPS, and as such, UPS is vicariously liable for the aforesaid unlawful acts and/or failure to act of its said management, supervisors and agents, including, but not limited to, the retaliatory constructive discharge of Koontz, the unlawful refusal to make reasonable accommodations to permit her to return to and continue in her employment with UPS and all said acts/actions have been in violation of the Compensation Act and the Civil Rights Act and the Administrative Regulations promulgated under the authority of each said Act.

64.  As the result of the aforesaid adverse employment actions taken against her by UPS in retaliation for her having pursued a claim for workers compensation benefits, Koontz has suffered compensatory damages including, but not limited to, embarrassment, intimidation, indignity, and loss of past wages and she will continue to suffer the loss of future wages.

65.  UPS is liable for the actions taken by its managers, supervisors, employees and agents against Koontz.

66. Koontz is entitled to recovery of costs of this suit, including reasonable attorney fees.

COUNT I
UPS RETALIATED AGAINST KOONTZ BECAUSE SHE PURSUED
A CLAIM FOR WORKERS' COMPENSATION BENEFITS.

67.  Koontz reaffirms and reiterates each and every allegation as set forth hereinabove in paragraphs 1 through 66 as if copied verbatim herein.

68.  At all times relevant, Koontz was employed by UPS at its Lexington, Fayette County logistics center.

69.  In the course and scope of her employment with UPS, Koontz was exposed to material and matter known to be a cause of or a source of transmission of the disease of histoplasmosis.

70.  Acting in good faith and on the advice of counsel, Koontz pursued a claim for Kentucky workers' compensation benefits because she contracted the disease of histoplasmosis during the period of her employment with UPS and in an environment known to subject the exposed individual to contact with matter which carried the source of histoplasmosis .

71.  UPS, its managers and supervisors, knew that Koontz was pursuing a claim for workers compensation benefits for the contraction of the disease of histoplasmosis and that she was acting on the advice of her attorney who represented her in pursuit of the said claim for workers' compensation benefits.

14

72. Koontz's claim for workers' compensation benefits was eventually dismissed because there was a conflict in the medical evidence concerning the exact identity of the location of the exposure which caused her to contract the said disease.

73. KRS 342.197 (1) & (3) makes it unlawful for an employee to be subjected to discrimination for pursuing a workers' compensation claim and the eventual dismissal of the litigated claim does not nullify any of the rights or remedies guaranteed to the claim

74. Koontz's pursuit of her claim for workers' compensation benefits was a substantial motivating factor in the decision of UPS to refuse to permit her to retain her employment with UPS.

75. UPS unlawfully discriminated and retaliated against Koontz by refusing to retain her in its employment after she filed the said claim for workers' compensation benefits and the claim was dismissed because of a conflict in medical evidence.

76. The culture and leadership at UPS created an environment which fostered and condoned acts of discrimination against an employee who is or who has pursued a claim for workers' compensation benefits.

77. There was a close temporal relationship between Koontz's protected activity of pursing a claim for workers' compensation benefits and the acts of UPS which caused her constructive discharge from employment at UPS.

78. As the result of the aforesaid unlawful discriminatory and punitive and adverse employment actions directed against Koontz in violation of rights secured to her by the Act, and more specifically, as provided by KRS 342.197(1) & (3), Koontz has been caused to suffer discrimination, severe emotional distress, intimidation, indignity,

15

embarrassment, loss of self esteem, difficulty recovering from her work injury,

inconvenience, loss of earning capacity, loss of front pay for which unlawful actions UPS

is liable to Koontz for actual compensatory damages and reasonable attorney fees and

costs of Court.

## COUNT II

UPS UNLAWFULLY DISCRIMINATED AGAINST TRACIE KOONTZ BECAUSE
SHE REPORTED A DISABILITY OR BECAUSE SHE WAS PRECEIVED TO HAVE A
DISABILTY WHICH COULD HAVE BEEN REASOBLY ACCOMODATED BY UPS
WITHOUT UNDUE HARDSHIP.

79.  Koontz reaffirms and reiterates the allegations and claims asserted on behalf of

Koontz in numerical paragraphs 1 through 78 herein above.

80.  Koontz is a qualified individual with an actual or perceived disability which could

have been reasonably accommodated by UPS without undue hardship.

81.  Because of her actual or perceived disability as that concept is defined in KRS

344.010, et seq., UPS refused to permit Koontz to retain her employment with UPS by

constructively discharging her and refusing to offer or make any reasonable

accommodation to permit her to engage in work for which she was qualified in an area

where she would be exposed to an environment known to contain material which is a

carrier of material that transmits the disease of histoplasmosis.

82.  UPS failed and refused to provide any means for Koontz to engage in a reasonable

and effective interactive consideration of job positions with UPS that would have

provided reasonable accommodation for her known susceptibility to contraction of the

disease of histoplasmosis.

83.  The refusal and failure of UPS to provide any reasonable accommodation which would not have created an undue hardship for the employer and its refusal to permit there to be any reasonable and effective interactive consideration of an alternative job for which Koontz was qualified, constituted a violation by the employer of rights secured to Koontz by KRS 342. 010, et seq.

84.  As the result of the aforesaid violation by UPS of rights secured to Koontz by KRS 344.010, et seq., she has suffered unlawful discrimination because of her actual and/or perceived disability, which discrimination has caused her to suffer severe emotional distress, humiliation, intimidation, indignity, embarrassment, loss of self esteem and loss of past and future earnings and earning capacity, for all of which UPS is liable to Koontz for compensatory damages, reasonable attorney fees and costs of Court.

<div style="text-align:center">

COUNT III
BRIAN SCHWEINEFUS IS INDIVIDUALLY LIABLE TO KOONTZ
UNDER THE PROVISIONS OF KRS 344.280.

</div>

85.  Koontz reaffirms and reiterates the allegations and claims asserted on her behalf in numerical paragraphs 1 through 84 hereinabove.

107. Koontz is a qualified individual and in a protected class as defined in KRS 344.010, et seq. because she is disabled or perceived to be disabled because of her susceptibility to the contraction of a pulmonary disease in certain areas of the work environment at the UPS Lexington, Kentucky logistical facility.

86.  Because of her actual or perceived disability, Schweinefus, individually, and by assisting and coercing other UPS employees at the said Lexington facility, discriminated against Koontz by refusing to permit there to be any interactive process between Koontz and UPS to develop a reasonable accommodation of change of

physical location of her work area which change would not have created any undue hardship on the UPS business.

87. Because of his individual actions or failure to act which resulted in the denial of rights to which Koontz was and is entitled under the provisions of the Civil Rights Act, because of her actual or perceived disability, Schweinefus is individually liable to Koontz for damages under the provisions of KRS 344.280.

## RELIEF DEMANDED

Wherefore, the Plaintiff, Koontz, demands relief against the Defendant, UPS, as follows:

1. Judgment in favor of Koontz against the Defendant, UPS, for actual compensatory damages suffered by Koontz as the result of the unlawful harassment, coercion, retaliation, and discrimination against her because of her lawful pursuit of a claim for workers' compensation benefits;

2. Judgment in favor of Koontz against UPS for actual compensatory damages suffered by Koontz as the result of the unlawful disability discrimination against her in refusing to make reasonable accommodation for her actual or perceived disability, which accommodation would have enabled her to continue in active employment with UPS.

3. Judgment in favor of Koontz against UPS for actual compensatory damages for creating such conditions and barriers because of her actual or perceived disability that she was caused to be constructively discharged from her employment with UPS .

4.  Judgment in favor of Koontz against UPS for its failure to provide her access to the mandatory interactive accommodation process when she requested accommodated work.

5.  Judgment in favor of Koontz against Brian Schweinefus for actual compensatory damages because he acted in violation of KRS 344.280 by individually and/or through coercion of others denying Koontz access to the interactive process to enable her to return to active employment with UPS after she was disabled or perceived to be disabled.

6.  Recovery of reasonable attorney fees, litigation expenses and costs of Court.

7.  Trial by jury.

<div style="margin-left: 40%">

Respectfully submitted,

_____

Plaintiff's Attorney
CLARK LAW OFFICE, INC.
851 Corporate Drive, Suite 310
Lexington, KY 40503
Tel (859) 219-1280
Fax (859) 219-0727

</div>

PLAINTIFF VERIFICATION OF STATEMENT OF FACTS

   Comes the Plaintiff, Tracie Koontz, and after having been duly sworn, states that she has read the entirety of the nineteen pages of the Complaint herein, that she has particularly focused on each paragraph of the Statement of Facts, and that based upon her knowledge and understanding of the facts relating to her Complaint, the facts stated herein are true and correct.

Dated: A\C)P---,                                   3,1
                                        TRACIE KOONTZ

County of Fayette

Commonwealth of Kentucky

   Tracie Koontz appeared before me today and under oath stated that she had read the entirety of the Complaint in this matter and that the factual statements set forth in this Complaint are true and correct to the best of her knowledge and understanding.

                              Notary Public  Sta=&rge

My commission expires:  O^\\\

20



US POSTAGE >> PITNEY BOWES

ZIP 40507  $ 007.00⁰
02 1H
0001370038 JAN 15 2013



7196 9006 9115 5199 8008
RETURN RECEIPT REQUESTED

CSC LAWYERS INCORPORATION
421 WEST MAIN STREET
FRANKFORT, KY  40601

13-CI-206
UNITED PARCEL SERVICES

VINCENT RIGGS
FAYETTE CIRCUIT COURT
FAYETTE COUNTY
120 N. LIMESTONE STREET C 103
LEXINGTON, KY 40507